Shientag, J.
This appeal raises the following question of law: Has the board of estimate of the city of New York, without the approval of the city art commission, the power to order the completion of the demolition of what is known as the aquarium building, including some remaining walls of a structure that was formerly Fort Clinton? With questions of policy this court can have no concern. Those are matters for the appropriate governmental agencies involved; we deal only with the question of law presented.
The board of estimate has the discretion to direct the demolition or removal of all public buildings owned by the city (Administrative Code, § 384 — 12.0, subd. a). The board of estimate, before it shall dispose of any real property, must determine that it is no longer required for public use (Administrative Code, § 384A5.0). The approval of the art commission is required only with respect to matters embraced within the provisions of section 854 of the New York City Charter. That section should, of course, be read as a whole, but its more pertinent parts are as follows: “ a. The term ‘ work of art ’ as used in this chapter shall apply to and include all sculptures, paintings, mural decorations, mosaics, stained glass, statues, carvings or castings in high or low relief, inscriptions, monuments, fountains, arches, walls, curbings, steps, gates, fences, benches, lamps or traffic signals, erected or to be erected upon or over land belonging to the city, whether the works of art be the property of the city itself or of an institution, corporation or private individual, and whether intended for ornament, commemoration or actual use. * * *
‘ ‘ f. The commission shall periodically examine all monuments, sculpture and paintings belonging to the city, shall make or approve detailed recommendations for their cleaning, maintenance and repair, and shall have general supervision over such monuments, sculpture and paintings and their cleaning, maintenance and repair. No cleaning, restoration, repair, alteration, removal or relocation of any work of art shall be contracted for, commenced, or prosecuted, unless approved in writing by the commission. * * * ”
Does what now remains of the old fort, which 125 years ago was Fort Clinton, constitute a “ work of art ” or a “ monument ” within the meaning of the section above quoted? At this point, a bit of history may tend to clarify the problem. The aquarium building is the successor structure to a small fort constructed about 1811 on what was then the edge of Battery Park *79 and was connected with Battery Park by a bridge. It was constructed on land ceded to Congress by the Corporation of the City of New York in 1806, and was one of a series of three forts designed with several others for the defense of New York City. Another fort, known as Castle Williams, was built on Governors Island and is still in existence. A third fort was erected on Bedloe’s Island and now serves as the foundation for the Statue of Liberty. The Battery Park fort, first known as the South West Battery and later as Port Clinton and Castle Clinton, was designed by the same architect who designed the New York City Hall. The history of the fort during the War of 1812, was a passive one, but it was part of a system of fortified positions set up to guard against possible invasion by a. British fleet which, stationed outside of Sandy Hook, did in fact blockade the port.
The fort was abandoned by the Federal Government in 1823, and was ceded to the city pursuant to an act of Congress which authorized the President of the United States to reconvey, to the Mayor and Corporation of the City of New York, the tract of land near the west head of the Battery theretofore granted to the Government of the United States by the city, and ‘ to cause the works erected thereon to be dismantled, and the materials thereof to be disposed of, in such manner as in his judgment the public interests may require (6 U. S. Stat. 263, 264 [ch. 17].) The city, which was free to deal with the fort as it wished, converted it to a public assembly and entertainment hall, leasing it out to private interests under the name of Castle Point and later Castle Garden. Jenny Lind sang there, under the management of P. T. Barnum; Daniel Webster spoke there; and it was used, when necessary, to receive distinguished visitors. In 1855, it was changed to an immigration center and remained as such until 1896, when it was converted into the aquarium. It was used as the aquarium, in the memory of most of us, until that use was abandoned in 1941. The old fort, of course, disappeared long ago. A completely different public building, the aquarium building, in the construction of which the foundations and walls of the fort were utilized, had finally been built on the site. This bore no resemblance to the fort, and was the result of plans and changes made for aquarium purposes. To give meaning to what is now left of the old fort, and to utilize what remaihs of its old walls, it would be necessary to demolish some remaining parts of what is now left standing and to rebuild a replica of Port Clinton at considerable expense, running into several hundreds *80 of thousands of dollars. No claim is made that the art commission has any power to direct such a restoration or to require that the board of estimate make appropriate provision therefor.
With the foregoing background, we now consider the case before us for determination. It arises out of the reconstruction of the Battery Park area to accommodate the Brooklyn-Battery Vehicular Tunnel. The plan, as it was proposed by the park commission to the board of estimate, involved either the demolition of the aquarium building, including its walls ánd foundation, which were those of old Fort Clinton, or the restoration of that structure to- its original form, namely, to the fort which, more than a century ago, was known as Fort Clinton.
A plan with those alternatives was presented to the board of estimate on March 23, 1942, the park commissioner favoring demolition of the aquarium structure. On June 25, 1942, after public hearings, that board, by a vote of 11 to 5, approved the park program; it authorized bids for the sale and demolition of the aquarium building and in the absence of such bids empowered the park department to proceed with the demolition. On September 2, 1942, the board of estimate adopted a further resolution, which reaffirmed and ratified its prior action, and again authorized the demolition of the aquarium structure, including the walls of what was formerly Fort Clinton. An action was thereupon brought to restrain the carrying out of the plan thus adopted (Wetter v. Moses, 265 App. Div. 993, appeal dismissed 290 N. T. 761). The relief asked for in that action was, in effect, to restrain the defendant from tearing down what the plaintiff said were the remains of Fort Clinton and what he characterized as an historic military relic of the War of 1812, standing in Battery Park, and from erecting certain pylons as part of the project. There was a full disclosure, in that litigation, of the entire project, and the main issue litigated involved the power of the board of estimate to order the demolition of the structure in controversy. The full exercise of that power was upheld, and this court affirmed the order of Special Term granting judgment in favor of the defendant and dismissing the complaint on the merits.
It is now contended that the Wetter case (supra) is not decisive of the instant proceeding for several reasons: (1) that in the Wetter case there was not directly litigated the question here involved, namely, whether or not the art commission’s approval of the demolition was required; (2) that in the Wetter case it was represented to the court that the park commissioner *81 would submit, in the regular course, to the art commission for its approval, plans involving the demolition of the aquarium building, including what remained of old Fort Clinton; and (3) that since 1946, what now remains of Fort Clinton has been declared by Congressional legislation, and by the action taken by the city with respect thereto, to be an historic national monument.
The first two points will be taken up now, and the third will be considered later in its chronological setting.
An examination of the record of the Wetter case, cited, shows that the question of the necessity of obtaining the approval of the art commission before demolition, was directly involved, was there litigated, and was decided adversely to the contentions of the plaintiff. The complaint in the Wetter case alleged failure to obtain approval of the art commission for demolition under section 854 of the Charter (pars. 31, 40, subpar. 2 [a]). Those allegations were put in issue by the denials in the answer, and paragraph 23 thereof went on to allege that “ the Board of Estimate having determined the question of policy that the Aquarium Building should be demolished and Fort Clinton should not be restored, the defendant, as Commissioner of Parks of the City of New York, will draw detailed plans for the reconstruction of Battery Park and will submit to the Art Commission and other municipal agencies those portions of the plans which are required to be submitted for their approval before final contracts for reconstruction are let. ’ ’
In that case moreover, the affidavits dealt with the opposing contentions concerning the necessity of approval by the art commission. For example, the park commissioner, in his affidavit in support of the motion for summary judgment dismissing the complaint, said: “The Art Commission has nothing to do with the question as to whether the Aquarium shall be retained or demolished. Only the Board of Estimate can make that decision. This was judicially determined by Mr. Justice Valente in Matter of Wetter v. Moses, supra [Matter of Wetter v. Moses, N. Y. L. J., Nov. 18, 1941, p. 1548, col. 1.]. Neither the Art Commission nor anyone else, including this plaintiff, can compel the Board of Estimate to restore an old fort at a cost of $200,000, nor can it compel the continuation and usage of a building for a purpose which the governing body of the city no longer recognizes as desirable. On the other hand, any new building, new statuary, or relocation of statuary requires the approval of the Art Commission.”
It is significant, moreover, that the park commissioner later did submit to the art commission plans for the reconstruction of Battery Park, which plans showed, on their face, the demolition of
*82 the aquarium building, including what remained of old Fort Clinton, and received what is characterized as the “ preliminary approval ” of those plans by the art commission under date of January 14, 1946.
To return to the chronological order of events, it appears that, pursuant to the authorization of the board of estimate of June 25,1942 and September 2,1942, the demolition of the aquarium building proceeded and was in large part accomplished; a contract was let, and the roof and interior of the building were demolished. Other parts of the structure were torn down by city forces, and the remainder was to be demolished by a final contract when the exigencies of the war caused the work to stop. After the war ended, and before the contract for final completion was authorized by the board of estimate, the United States Secretary of the Interior sponsored a project for transferring the remains of the fort and the land on which it stood to the Federal Government. Congress passed an Act ‘ ‘ To establish the Castle Clinton National Monument, in the city of New York,” which authorized acceptance of title to the site. This act was approved August 12, 1946, and authorized the Secretary of the Interior to accept, on behalf of the United States, title to the site comprising approximately one acre and situated in Battery Park, New York City, “ of the historic structure known as Castle Clinton.” (60 U. S. 997.) No item to cover the expense of restoration of the old fort was included in the budget submitted to the National Congress. Thereafter, on July 24, 1947, and notwithstanding the enactment of this Federal legislation, the board of estimate authorized the letting of a contract for the completion of the work of demolition. On July 30, 1947, the art commission resolved that no approval of the commission had been given to the demolition of Fort Clinton as required by subdivision f of section 854 of the New York City Charter; that Fort Clinton was a monument and, therefore, a work of art under that section.
The Secretary of the Interior again intervened, pointing out that no appropriation for the restoration of the Fort could be made by Congress until the land had been ceded to the Federal Government, or an obligation so to do had been entered into. After the receipt of this communication, the board of estimate rescinded the resolution of July 24, 1947, which had authorized the completion of the work of demolition, and the mayor and the city council then asked the State Legislature for authority to cede the site of old Fort Clinton to the Federal Government. A bill was submitted authorizing the transfer of the property of the *83 United States “ for the purpose of the establishment and preservation of a national monument to be known as Castle Clinton National Monument ”. (Sen. Pr. No. 1055, Int. No. 1016.) The bill was passed by the State Senate but was not reported out of the Buies Committee of the Assembly, and the proposed legislation, therefore, failed. On March 27, 1948, the board of estimate again authorized a contract for the completion of the work of demolition, and the park commissioner, respondent, asked for bids. The approval of the art commission was not sought, and the contract was let on June 11, 1948. This proceeding was then brought and a motion for a temporary injunction was granted at Special Term, the court holding that the remains of what at one time was Fort Clinton constitute a “ monument ”or“ work of art ” within the meaning of section 854 of the City Charter and cannot be demolished without the approval of the New York City art commission. We are not in accord with that ruling.
As has already been pointed out, the Wetter case is authority for the proposition that, as the situation then stood, the board of estimate of the city of New York, the governing body of the city, had the right to determine for itself, and without the approval of the art commission, whether it would demolish the aquarium building, with the walls and foundation of what was formerly Fort Clinton, or whether it would restore old Fort Clinton. The action of the board of estimate in ordering such demolition without the approval of the art commission of the city of New York, was upheld in all respects by the courts. Nothing has happened since that time to impair this holding. The work of demolition has proceeded to a substantial extent. It is urged that the remaining walls of old Fort Clinton constitute a “ work of art ” within the meaning of section 854 of the Charter. One difficulty with this contention is that it is not sought to preserve these walls as such. What is proposed is that the walls serve as part of the restoration and reconstruction of the old fort. This the art commission has no right to compel the governing body of the city to do.
The Congressional act of August 12,1946, and the action taken by the city with respect thereto, in no way establish that what remains of the walls of Fort Clinton constitutes a “ work of art ” within the meaning of section 854. All that they mean is that the city did not wish to restore or to build a replica of the old fort, bqt that it was willing to permit the National Government to do so, if it desired, at its own expense. A reading of the Congressional act makes it clear that there is now no “ monument ” in *84 Battery Park. The act of Congress was passed for the sole purpose of establishing a monument if title to the site were vested in the Federal Government.
More than one hundred years ago Fort Clinton was dismantled; its use as a fort was abandoned; and it ceased to be known as Fort Clinton or Castle Clinton. It suffered a complete loss of identity and was incorporated, with many changes, into other structures. of entirely different types and devoted to entirely different uses. At no time since Fort Clinton was owned by the City of New York, that is, from 1823 on, has it been considered or treated as a public monument for historic or aesthetic reasons, nor has it been considered a “ work of art ” or even claimed to be such before the litigation of 1942. It would be giving a most strained and unnatural construction to section 854 to hold to be a “ monument ” or “ work of art ” what now remains of an old fort, when those remains cannot be allowed to stand as they are and concededly could only be used for purposes of restoration or reconstruction.
The fair intendment of section 854, in the light of the history of the use to which the structure involved has been put, was not to place the art commission in the controlling position of overriding the board of estimate on the demolition of the Aquarium and compelling it to appropriate the funds to restore and reconstruct Fort Clinton against its unanimous decision.
We hold, therefore, that what now remains of the Aquarium structure or of the walls of the old fort which preceded it does not constitute a “ monument ” or a “ work of art ” within the meaning of the City Charter, and may be dealt with by the board of estimate in accordance with its own judgment. That board still has the right to change the plan for demolition, in the event that legislation is passed permitting the retransfer of the site to the Federal Government, under such terms and conditions as the board of estimate may approve, or for any other reason. Those are matters which are solely the concern of the board of estimate and of the legislative bodies involved, and not of the courts. We merely hold that, whatever action is taken, the art commission of the city of New York has no present jurisdiction in the matter so far as demolition is concerned, and no duties to perform. The order should be reversed and the petition dismissed.
Peck, P. J., Cohn and Van Voobhis, JJ., concur.
Order unanimously reversed, with $20 costs and disbursements to the appellant and the petition dismissed. Settle order on notice.